UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------X
UNITED STATES of AMERICA,

                              Plaintiff,          MEMORANDUM
                                                  OPINION AND ORDER


          -against-                               CV 04-4950 (ETB)


ROGER DAVID ELTON,

                              Defendant.
-----------------------------------------------------------------------X

        This tax collection case concerns tax assessments for income earned by defendant Roger

David Elton ("Elton" or "defendant") during tax years 1988, 1989, 1990, and 1991. The

relevant facts, as set forth in the complaint, the parties' Rule 56.1 Statements, and other

documents submitted in connection with defendant's motion for summary judgment and the

government's cross-motion for summary judgment, are undisputed unless otherwise noted.

                              **OVERVIEW**

        The issue in this action is whether the statute of limitations ("SOL") has run. The IRS

has ten years from the date of a tax assessment to collect a tax due and owing. 26 U.S.C. §

6502(a). The defendant's tax liabilities for the tax year 1988 and 1989 were assessed on March

4, 1991, the tax liability for tax year 1990 was assessed on November 25, 1991, and the tax

liability for tax year 1991 was assessed on June 8, 1992. (Certificates of Official Record and

Forms 4340 for Defendant for tax years 1988, 1989, 1990, and 1991, annexed to Steiner Decl. as

Exhs. A-D.) The parties do not dispute the assessment dates. With respect to tax year 1991, the

government states that the defendant does not dispute that the Court should grant summary

judgment in favor of the government. (Pl.'s Mem. at 1.) While defendant does not explicitly so

state, it is true that the defendant does not address tax year 1991 in any of his arguments or submissions. (See, e.g., Def.'s Mem. at 17 ("Consequently, the claims in the Complaint for tax liabilities for the tax years 1988, 1989, and 1990 are barred by the SOL."); see also Def.'s Mem. at 9, 15.) Thus, this dispute primarily concerns whether the government's complaint for tax years 1989, 1989, and 1990 was timely filed.

The ten-year SOL set forth in 26 U.S.C. § 6502(a) can be tolled by certain events, such as the taxpayer's filing of a petition for bankruptcy, or the period during which a taxpayer's offer-in-compromise ("OIC") is under consideration. 26 U.S.C. § 6503 (setting forth the tolling period where the taxpayer is in bankruptcy) and IRS Form 656 (setting forth the tolling period where an OIC filed by the taxpayer is under consideration by the IRS).

The defendant here filed two bankruptcy petitions: (1) a bankruptcy petition filed on February 13, 1996 that terminated on May 23, 1996; and (2) a bankruptcy petition filed on August 5, 1996 that terminated on July 1, 1997. Under 26 U.S.C. § 6503, tax collection is prohibited until the debtor emerges from bankruptcy, and for an additional six months thereafter. 26 U.S.C. § 6503. Thus, the defendant's two bankruptcies had the effect of tolling the statute for 1 year plus 323 days, or 688 actual days– from February 13, 1996 through January 1, 1998– six months after the termination of the second bankruptcy petition. The parties do not dispute the amount of time that the statute was tolled due to the bankruptcies. (Pl.'s Mem. at 2; Def.'s Mem. at 13.)

The dispute in this case concerns the amount of time that the statute was tolled by the filing of defendant's November 13, 1992 OIC, June 14, 1993 OIC, April 12, 1994 OIC, and July 21, 1994 OIC, and the effect of the Restructuring and Reform Act, PL 105-206, § 3461(c), on the private extension agreements entered here between the taxpayer and the IRS.

# I.     THE FACTS

Defendant Roger David Elton filed his tax returns for tax years 1986, 1987, 1988, and 1989 on February 21, 1991. (Amended Affidavit of Roger David Elton ("Elton Am. Aff.") ¶ 10.) On February 21, 1991, Elton authorized his tax attorney at that time, Michael A. Zimmerman ("Zimmerman"), to hand deliver the returns for tax years 1986, 1987, 1988, and 1989 to an IRS agent at the IRS offices located at 1501 Broadway, New York, New York. (Id.) Defendant filed his 1990 income tax return on October 22, 1991, after receiving one extension to August 15, 1991. Elton subsequently also filed his return for 1991. (Id. ¶ 11.)

On March 4, 1991, plaintiff United States of America ("United States" or "government") assessed additional taxes, including penalties and interest, against Elton for tax years 1986, 1987, 1988 and 1989. (Defendant's Rule 56.1 Statement of Facts ("Def.'s Rule 56.1 Statement") ¶¶ 1-2; Plaintiff's Rule 56.1 Counter Statement of Facts ("Pl.'s Rule 56.1 Counter Statement") ¶¶ 1-2.) On November 25, 1991, the government assessed tax liabilities for Elton for tax year 1990. (Def.'s Rule 56.1 Statement ¶ 3; Pl.'s Rule 56.1 Counter Statement ¶ 3.) On June 8, 1992, the government assessed tax liabilities for Elton for tax year 1991. (Def.'s Rule 56.1 Statement ¶ 4; Pl's Rule 56.1 Counter Statement ¶ 4.)

From May, 1991 through February, 1992, Elton voluntarily made monthly installment payments totaling approximately $45,000. (Def.'s Mem. in Supp. at 3.) The IRS credited Elton's payments against his liabilities chronologically in the order that they arose, and both parties agree that the assessments for 1986 and 1987 have been paid. (Id.; Pl.'s Mem. at 4.) The taxpayer acknowledges that the sole issue before the Court is whether this action is timely. (Am. Aff. of Roger David Elton, ¶ 5.) The Court will deem the Certificates of Official Record and Forms 4340 filed by the government in opposition to defendant's motion for summary judgment to be in support of the government's cross-motion for summary judgment for an order reducing

to judgment the income tax assessments for 1988, 1989, 1990 and 1991.[1]

A.    The November 13, 1992 Offer In Compromise

The first Offer-In-Compromise ("OIC") Elton submitted was dated November 13, 1992 (the "November 13, 1992 OIC").  (Def.'s Rule 56.1 Statement ¶ 5; Pl.'s Rule 56.1 Counter Statement ¶ 5.)  This OIC, submitted on IRS Form 656 and accompanied by a letter dated November 18, 1992 from Elton's tax attorney, Zimmerman, proposed that Elton would pay $68,500 over a ten (10) month period, in addition to the regular monthly payments he had been making, to satisfy his entire aggregate tax liability for all previous years.  (Elton Am. Aff. ¶ 18; November 13, 1992 OIC, annexed to Elton Am. Aff. as Exh. B.)  The government accepted defendant's November 13, 1992 OIC for processing on December 15, 1992.  (Def.'s Rule 56.1 Statement ¶ 6; Pl.'s Rule 56.1 Counter-Statement ¶ 6.)

B.    The June 14, 1993 Offer In Compromise

Defendant contends that, having received no response from the IRS to his November 13, 1992 OIC, he sought to revise his offer because his financial situation had deteriorated.  (Def.'s Mem. at 6.)  On June 15, 1993, Elton submitted another Form 656 OIC to the IRS, dated June 14, 1993 (the "June 14, 1993 OIC"), with a letter from Zimmerman to IRS Officer Jerry Freda, dated June 15, 2003, stating "I am enclosing a revised Offer in Compromise in which Mr. Elton is offering to pay the same $68,500.00, but he is respectfully requesting that you extend the time within which he can pay it from ten (10) months to twenty-one (21) months."  (Def.'s Mem. at 6; see also June 14, 1993 OIC, annexed to Elton Am. Aff. as Exh. D; Letter from Michael A.

---

[1]These amounts, computed as of September 19, 2005, are as follows: (1) Year 1988– $9,788.11; (2)Year 1989– $32,803.52; (3) Year 1990– $1,862.16; (4) Year 1991– $30,878.31. (Exhs. A-D, annexed to Decl. of David M. Steiner in Opp'n to Def.'s Mot. for Summary Judgment.)

4

Zimmerman to IRS Officer Jerry Freda, dated June 15, 1993, annexed to Elton Am. Aff. as Exh. C.) Defendant states that he was thereafter informed that Elton could not "revise" his November 13, 1992 OIC, but rather, that Elton should withdraw the November 13, 1992 OIC and submit another. (Def.'s Mem. at 6.) Zimmerman prepared another letter, dated June 24, 1993, to IRS Officer Jerry Freda, stating: "This letter is to confirm that on behalf of the above listed Taxpayer, we hereby withdraw the Form 656, Officer In Compromise dated November 13, 1992 and substitute in lieu thereof the Form 656, Offer In Compromise previously furnished to you dated June 14, 1993." (Letter from Michael A. Zimmerman to IRS Officer Jerry Freda, dated June 24, 1993, annexed to Elton Am. Aff. as Exh. E.) Defendant contends that thereafter, the government required him to submit the June 14, 1993 OIC yet another time, separately from the withdrawal letter. (Def.'s Mem. at 7.) Defendant states that, therefore, he sent the IRS a transmittal cover letter, dated July 19, 1993, enclosing the June 14, 1993 OIC for formal re-submission. (Id.; see also Letter from Michael A. Zimmerman to IRS Officer Jerry Freda, dated July 19, 1993, annexed to Elton Am. Aff. as Exh. G. ("Enclosed please find the fully executed Offer In Compromise as signed by Mr. Roger D. (David) Elton.").)

The defendant's June 14, 1993 OIC was accepted for processing and consideration on August 13, 1993. (See Certificates of Official Record and Forms 4340 for Defendant for tax years 1989, 1990, and 1991, annexed to Declaration of David M. Steiner in Opp'n to Def.'s Mot. for Summary Judgment ("Steiner Decl.") as Exhs. B-D.)

C.    The July 29, 1993 Letter from the IRS to the Defendant

Both parties agree that the IRS responded with a letter from Robert L. Douglas to the defendant, dated July 29, 1993, stating in relevant part the following:

> This refers to your offer of $68,500.00 submitted to compromise your liability for income taxes for the years 1986, 1987, 1988, 1989, 1990 and 1991.

5

In your letter of June 24, 1993 you state in part:

"We hereby withdraw the Form 656, Offer in Compromise dated November 13, 1992."

The offer is considered withdrawn as of June 24, 1993, the date your letter was received.

\*     \*     \*     \*

(Letter from Robert L. Douglas to Roger D. Elton, dated July 29, 1993, annexed to Elton Am. Aff. at Exh. F.)  Defendant contends that because the letter explicitly states that the November 13, 1992 OIC was considered withdrawn as of June 24, 1993, the SOL began tolling again on June 24, 1993.  (Def.'s Mem. at 8.)  The government argues, based on case law and the language of Form 656, that despite the language of the letter, the November 13, 1992 OIC remained pending until July 29, 1993, the date that the IRS stated in writing that the OIC was withdrawn.  (Pl.'s Mem. at 9-10.)

D.     The March 2, 1994 Letter from the IRS to Defendant

Thereafter, the IRS sent defendant a letter, dated March 2, 1994, which refers to the June 14, 1993 OIC, and states:

We have considered your offer in compromise and regret that an acceptable arrangement has not been reached.  The reason [the] offer is not acceptable is because the tax is held to be legally due and an amount larger than the offer appears to be collectible.  We do not have the authority to accept an offer in these circumstances.

If you accept our findings, or do not intend to protest it, please write or call us.  We will then handle your case on the basis of that finding.

If you do not accept our findings and want a hearing, you should send us your request within 30 days from the date of this letter.  We will forward it to the Office of Regional Director of Appeals and they will contact you to arrange an appointment.  A written protest is required for a hearing in all cases where the total liability exceeds $2,500.00 for any taxable year or period.  Please refer to

> the attached statement for instructions on preparing the written appeal. A statement of facts supporting your position on any contested issue must be included in the appeal.
>
> If we do not hear from you within 30 days, your offer will be rejected. We must therefore ask you to pay your account in full as soon as possible. If you have any questions, please contact S. Irizarry, Advisor, Accounts Management Special Processing Branch, at telephone number (212) 264-8323.

(Letter from Robert L. Douglas to Roger D. Elton, dated March 2, 1994, annexed to Elton Am. Aff. at Exh. I.)

The parties also dispute the import of this letter. Defendant asserts that this letter constituted a rejection of defendant's June 14, 1993 OIC, and that therefore, the statute of limitations began to run again on March 2, 1994. (Def.'s Mem. at 7-8.) The government argues that the IRS did not reject defendant's June 14, 1993 OIC because defendant contacted the IRS within 30 days of the date that the IRS sent its letter, thereby further delaying the government from finally rejecting the offer. (Pl.'s Mem. at 13-14; see Letter from Robert L. Douglas to Roger D. Elton, dated March 2, 1994, annexed to Elton Am. Aff. at Exh. I (stating "If we do not hear from you within 30 days, your offer will be rejected.").) The government maintains that the June 14, 1993 OIC remained pending until January 10, 1995, the date the IRS stated in writing defendant's withdrawal of the OIC. (Id.)

E.    The April 12, 1994 Offer in Compromise

Defendant asserts that – within the above 30-day period– on April 1, 1994, he faxed a letter dated March 31, 1994 to the IRS, stating:

> I am writing to confirm our telephone conversation this morning wherein we agreed that I would re-submit my Offer in Compromise to reflect the change in my personal circumstances. Per our discussion, the new Offer with supporting information will be to you by April 12, 1994. I appreciate your time and cooperation. As I said, at this time no one is gaining; I am anxious to resolve this matter as quickly as possible.

(Letter and cover sheet from Roger D. Elton to Ms. Irizarry, dated March 31, 1994, annexed to Declaration of David M. Steiner ("Steiner Decl.") as Exh. 1.)

Thereafter, defendant submitted another Form 656 Offer in Compromise to the IRS, dated April 12, 1994 (the "April 12, 1994 OIC"). (Form 656 Offer in Compromise, dated April 12, 1994, annexed to Steiner Decl. as Exh. 2.) In the April 12, 1994 OIC, defendant offered to compromise his liabilities for tax years 1987, 1988, 1989, 1990, and 1991 for $40,235. (Id.) Defendant also sent the April 12, 1994 OIC to IRS Revenue Officer Mr. DeMaria, with a letter dated May 5, 1994, in which defendant stated in relevant part:

> As we have discussed, I am enclosing the complete package of what I submitted to Ms. S. Irizarry at Church St. As a brief recap, I spoke to Ms. Irizarry before sending this Offer to discuss the earlier offer that had been sent. After that conversation, it was agreed that because my circumstances had changed, I should submit the enclosed April 12, 1994 Officer in Compromise. So, this is now the official "of record" Offer under review.
>
> *    *    *    *    *

(Letter from R.D. Elton to Mr. DeMaria, dated May 5, 1994, annexed to Steiner Aff. as Exh. 3.)

In response, by letter from the IRS to defendant dated May 27, 1994, the IRS stated:

> This refers to your offer of $40,235.00 submitted to compromise Federal income tax liabilities plus statutory additions for the years 1986, 1987, 1988, 1989, 1990 and 1991.
>
> We have considered your offer in compromise and regret that an acceptable arrangement has not been reached. The offer is not acceptable because we do not consider it to be in the best interests of the government.
>
> If you accept our findings, or do not intend to protest it, please write or call us. We will then handle your case on the basis of that finding.
>
> If you do not accept our findings and want a hearing, you should send your request within 30 days from the date of this letter. We will forward it to the Office of Regional Director of Appeals and they will

contact you to arrange an appointment. A written protest is required for a hearing in all cases where the total liability exceeds $2,500.00 for any taxable year or period. Please refer to the attached statement for instructions on preparing the written appeal. A statement of facts supporting your position must be included in the appeal.

If we do not hear from you within 30 days, your offer will be rejected. We must therefore ask you to pay your account in full as soon as possible. If you have any questions, please contact S. Irizarry, Advisor, Accounts Management Special Processing Branch, at telephone number (212) 264-8323.

(Letter from Robert L. Douglas to Roger D. Elton, dated May 27, 1994, annexed to Steiner Aff. as Exh. 4.)

On June 27, 1994, the defendant hand delivered a letter to the IRS stating in relevant part:

This letter is intended to supplement my Offer in Compromise dated April 12, 1994. Pursuant to our telephone conversation, I realize my offer could not be reviewed because Forms 1040 had not been filed for 1992 and 1993. Therefore, in order to comply with all necessary procedures, I am enclosing with this letter complete personal tax returns together with all exhibits and schedules for the years 1992 and 1993. Having completed this filing requirement, I again respectfully request your consideration of my Offer in Compromise.

*   *   *   *   *

(Letter from Roger David Elton to Ms. S. Irizarry, dated June 27, 1994, annexed with cover sheet to Steiner Aff. as Exh. 5.)

By letter dated July 21, 1994 to IRS Revenue Officer Michael DeMaria, defendant stated, in relevant part:

Pursuant to our several telephone conversations, it is my understanding that my Offer in Compromise must be amended to include all subsequent events which includes the filing of my complete tax returns for the years 1992 and 1993. In order to comply with your request, I am enclosing Form 656, Offer in Compromise, to include 1992 and 1993. Per your request, I am marking Form 656 "Amended" to reflect the inclusion of 1992 and 1993. As you will note, I am offering to pay 100% of the taxes I owe for 1992; I have not included 1993 in the payment terms as there are no taxes owing.

Having completed this filing requirement, I again respectfully request your consideration of my Offer in Compromise.

* * * * *

(Letter from Roger David Elton to Michael DeMaria, dated July 21, 1994, annexed to Steiner Aff. as Exh. 6.)

F.     The July 21, 1994 Offer in Compromise

Defendant's July 21, 1994 letter included a new OIC on Form 656, dated July 21, 1994 (the "July 21, 1994 OIC"), in which defendant offered to compromise his income tax liabilities for 1987, 1988, 1989, 1990, 1991, 1992, and 1993 for $41,451.00, $20,235.00 of which was to be paid within 30 days of acceptance, and the balance to be paid within 120 days. (July 21, 1994 OIC, annexed to Steiner Aff. as Exh. 6.)

In response, by letter from the IRS to defendant dated October 7,1994, the IRS stated:

> This refers to your offer of $41,451.00 submitted to compromise Federal income tax liabilities plus statutory additions for the years 1986, 1987, 1988, 1989, 1990, 1991, 1992 and 1993.
>
> We have considered your offer in compromise and regret that an acceptable arrangement has not been reached. The reason the offer is not acceptable is because you have not furnished sufficient information to enable us to determine its adequacy.
>
> If you accept our findings, or do not intend to protest it, please write or call us. We will then handle your case on the basis of that finding.
>
> If you do not accept our findings and want a hearing, you should send us your request within 30 days from the date of this letter. We will forward it to the Office of Regional Director of Appeals and they will contact you to arrange an appointment. A written protest is required for a hearing in all cases where the total liability exceeds $2,500.00 for any taxable year or period. Please refer to the attached statement for instructions on preparing the written appeal. A statement of facts supporting your position must be included in the appeal.
>
> If we do not hear from you within 30 days, your offer will be rejected.

We must therefore ask you to pay your account in full as soon as possible. If you have any questions, please contact Mr. C. Edelman, OIC Specialist, Field Branch 2, Manhattan District, at telephone number (212) 264-0137.

(Letter from Christine George to Roger D. Elton, dated October 7, 1994, annexed to Steiner Aff. as Exh. 7.)

By letter dated November 7, 1994, the defendant wrote to the IRS, stating:

Due to a recent move, I have just received your October 7, 1994 letter. I have tried to reach you directly on several occasions. The people to whom I have talked said I should write this letter until we can speak directly. I am certainly willing to supply any additional information you may require. I believe my offer is reasonable and very much want to do everything I can to illustrate the soundness of my offer. This letter is intended to preserve my offer until we can speak. Thank you very much.

(Letter from Roger D. Elton to Mr. C. Edelman, dated November 7, 1994, annexed to Steiner Aff. as Exh. 8.)

G.    The January 10, 1995 Letter from the IRS to the Defendant

The final correspondence between the government and defendant, for purposes of this action, is a letter from the IRS to the defendant, dated January 10, 1995, stating:

This refers to your offer of $41,451.00 submitted to compromise your liability for income tax for 1987,1988,1989,1990,1991,1992, and 1993.

In your letter of January 10, 1995 you state:

"I, Roger D. Elton, hereby withdraw my offer in compromise."

The offer is considered withdrawn as of January 10, 1995, the date your letter was received.

If you have any questions, please contact Mr. M. Newman, OIC Reviewer, Field Branch 2, Manhattan District, at telephone number (212) 436-1415.

(Letter from C. George to Roger Elton, dated January 10, 1995, annexed to Steiner Aff. as Exh. 9.)

The government argues that based on this letter, the statute began tolling again on January 10, 1995, the date that the IRS acknowledged in writing the government's withdrawal of the OIC. (Pl.'s Mem. at 13-14.)

Thereafter, on February 13, 1996, the defendant filed a bankruptcy petition in the Eastern District of New York under Chapter 13 of the Bankruptcy Code. (Def.'s Rule 56.1 Statement ¶ 17; Pl.'s Rule 56.1 Statement ¶ 17.) The Bankruptcy Court dismissed this petition on May 23, 1996, and the case was terminated on June 12, 1996. (Bankruptcy Docket Sheet, Annexed to Steiner Aff. as Exh. 11.) The defendant filed a second bankruptcy petition under Chapter 13 on August 5, 1996, which the Bankruptcy Court dismissed with prejudice on July 1, 1997. (Id.)

The complaint in this action was filed on November 16, 2004.

## II.    DISCUSSION

### A.    Legal Standard for Summary Judgment

Federal Rule of Civil Procedure 56(c) provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The burden is on the moving party to establish the lack of any factual issues. See id. The very language of this standard reveals that an otherwise properly supported motion for summary judgment will not be defeated because of the mere existence of some alleged factual dispute between the parties. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986). The requirement is that there be no "genuine issue of material fact." Id. at 248.

The inferences to be drawn from the underlying facts are to be viewed in the light most favorable to the non-moving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 588 (1986). When the moving party has carried its burden, the party opposing the summary judgment motion must do more than simply show that "there is some metaphysical doubt as to the material facts." Id. at 586. Under Rule 56(e), the party opposing the motion "may not rest upon the mere allegations or denials of his pleadings, but . . . must set forth specific facts showing there is a genuine issue for trial." Anderson, 477 U.S. at 248. By its terms, Rule 56 does not require that a judge make any findings of fact. See Anderson, 477 U.S. at 250. The only inquiry to be performed is the determination of whether there is a need for trial. See id. The court's principal analysis on a motion for summary judgment is to ascertain whether there are any "genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." Id.

B.      The Effect of the Offers In Compromise on the Statute of Limitations Period

IRS Form 656, the form used by the defendant to submit his offers in compromise, specifies that by filing the form, the taxpayer agrees to suspend the statute of limitations for assessment and collection of the tax liability "while the offer is pending, during the time any amount offered remains unpaid, and for one (1) year after the satisfaction of the terms of the offer." (See November 13, 1992 OIC ¶ 8, annexed to Elton Am. Aff. as Exh. B; June 14, 1993 OIC ¶ 8, annexed to Elton Am. Aff. as Exh. D.) The parties dispute the length of time that the statute of limitations was suspended as a result of Elton's November 13, 1992 and June 14, 1993 OICs.[2]

---

[2]The effect of the April 12, 1994 and July 21, 1994 OICs on the tolling calculation are examined in the discussion of the June 14, 1993 OIC, infra Part II.B.2.

13

1.      The November 13, 1992 Offer in Compromise

The parties agree that the defendant's OIC dated November 13, 1992 was accepted for processing and consideration by the IRS on December 15, 1992, which began the tolling of the statute. This is based on the language of paragraph 8 of the OIC: "[t]he offer shall be deemed pending from the date an authorized official of the Internal Revenue Service accepts taxpayer-proponents' waiver of the statutory period of limitation . . . ." (See November 13, 1992 OIC ¶ 8, annexed to Elton Am. Aff. as Exh. B.)

The parties disagree as to when the SOL period resumed. The defendant argues that the SOL resumed on June 15, 1993. Defendant states that June 15, 1993 was the date that his attorney, Zimmerman sent the IRS a "revised Offer in Compromise," dated June 14, 1993, in which Elton still offered to pay $68,500.00, but requested that the IRS extend the time within which he could pay it from ten (10) months to twenty-one (21) months. Defendant argues that this letter and "revised OIC" operated as a withdrawal of the original November 13, 1992 OIC. (Def.'s Mem. at 8.) However, defendant acknowledges that subsequently, he was informed by the IRS that he could not "revise" his November 13, 1992 OIC, and must instead withdraw it and submit another. (Id. at 6.) Defendant maintains, nonetheless, without any authority that June 15, 1993 is the operative date.

In the alternative, defendant argues that the November 13, 1992 OIC remained pending until June 24, 1993. (Id. at 8 n.1.) Defendant bases this argument upon the language of the July 29, 1993 letter from the IRS to the defendant, stating "The [November 13, 1992] offer is considered withdrawn as of June 24, 1993, the date your letter was received." (Id.) The government argues that pursuant to the language of Form 656, the November 13, 1992 OIC was pending until July 29, 1993, because the controlling date is not the date the taxpayer withdraws the OIC, but rather, the date the IRS "formally, in writing . . . withdraws the offer." (Pl.'s Mem.

at 10.)  The latter did not occur until the IRS correspondence dated July 29, 1993.  The language

relied upon by the government is Paragraph 8 of IRS Form 656 used by defendant to make his

November 13, 1992 OIC.  Paragraph 8 states:

> The taxpayer-proponents agree to the waiver and suspension of any statutory periods of limitations for assessment and collection of the tax liability described in paragraph (1) while the offer is pending, during the time any amount offered remains unpaid, and for one (1) year after the satisfaction of the terms of the offer.  <u>The offer shall be deemed pending from the date an authorized official of the Internal Revenue Service accepts taxpayer-proponents' waiver of the statutory periods of limitation and shall remain pending until an authorized official of the Internal Revenue Service formally, in writing, accepts, rejects or withdraws the offer</u>.  If there is an appeal with respect to this offer, the offer shall be deemed pending until the date the Appeals office formally accepts or rejects this offer in writing.  If within thirty (30) days of being notified of a right to protest a determination with regard to this offer no protest is filed, the taxpayer-proponents agree to waive the right to a hearing before the Appeals office for this offer in compromise.

(<u>See</u> November 13, 1992 OIC ¶ 8, annexed to Elton Am. Aff. as Exh. B (emphasis added).)

In <u>United States v. Donovan</u>, the Sixth Circuit Court of Appeals addressed a similar

issue, although the facts are not the same as those presented here.  <u>United States v. Donovan</u>, 348

F.3d 509 (6th Cir. 2003).  In <u>Donovan</u>, the taxpayer, Donovan, submitted an OIC on IRS Form

656.  <u>Id.</u> at 511.  It is noted that the language in Form 656 used in <u>Donovan</u> is different from the

form used by Elton.  Item 8 of the form in <u>Donovan</u> states: "The offer is pending starting with

the date an authorized IRS official signs this form and accepts my/our waiver of the statutory

periods of limitation.  The offer remains pending until an authorized IRS official accepts, rejects

or acknowledges withdrawal of the offer in writing."  <u>Donovan</u>, 348 F.3d at 512.  Here, the

comparable language in the version of Form 656 that Elton used states: " The offer shall be

deemed pending from the date an authorized official of the Internal Revenue Service accepts

taxpayer-proponents' waiver of the statutory periods of limitation and shall remain pending until

an authorized official of the Internal Revenue Service formally, in writing, accepts, rejects or withdraws the offer." (See. e.g., November 13, 1992 OIC ¶ 8, annexed to Elton Am. Aff. as Exh. B (emphasis added).)

In Donovan, the taxpayer sent the IRS a withdrawal of his OIC on April 18, 2000; the IRS sent a return letter, dated April 28, 2000, stating that "'[y]our offer is considered withdrawn as of 04/18/00.'" Id. Thereafter, the government filed suit, and the lower court granted the taxpayer's motion for summary judgment on the ground that the suit was barred by the statute of limitations. The government argued that the operative date for purposes of re-starting the statute of limitations clock was April 28, 2000, the date when the IRS acknowledged the withdrawal of the offer in writing. Id. The lower court rejected the government's argument, and instead agreed with Donovan that the operative date for purposes of calculating when the statute of limitations began to run again was April 18, 2000, the date on which the IRS stated by letter that the taxpayer's offer was considered by it withdrawn. Id.

The Sixth Circuit Court of Appeals reversed and remanded with an order that summary judgment be granted in favor of the United States. Id. The court found that the date of the effective withdrawal of the offer is a different matter from that of the date when the offer is no longer "pending," and agreed with the government that the IRS form letter sent to the taxpayer "contains the effective withdrawal date merely to indicate that the government can no longer accept the offer in compromise, and that this has nothing to do with when the statute of limitations begins to run again." Id. Rather, "the statute of limitations question turns on when the offer ceases to be 'pending' under. . . Form 656. The latter controls when the statute of limitations begins to run again." Id. at 513.

Defendant ignored Donovan in both his memorandum in support of his motion for summary judgment, and in his reply memorandum. At oral argument, defendant's counsel

distinguished <u>Donovan</u> based on the language in the form OIC here, which is different from the version of the OIC that Elton used. The language here does not require an "acknowledgment" of withdrawal by the IRS. It merely requires an "authorized official of the IRS" to formally withdraw the offer. On the facts here that is a difference without any legal significance.

More importantly, the 656 OIC form here as well as the one in <u>Donovan</u> give the IRS rather than the taxpayer the right to define when the SOL begins to run again. The significant factual distinction here is that there is no interim letter, as there was in <u>Donovan</u>. Thus, the first– and only correspondence– by the IRS relating to the withdrawal of the November 13, 1992 OIC is the writing dated July 29, 1993, from IRS official Robert L. Douglas. Even though he states in that letter that "the offer is considered withdrawn as of June 24, 1993," under the terms of Form 656, the pivotal date for purposes of the SOL is July 29, 1993, since the offer "shall remain pending until an authorized official of the Internal Revenue Service formally, in writing . . . withdraws the offer." (<u>Id.</u>)

The reasoning in <u>Donovan</u> is applicable here:

> [T]he date of the effective withdrawal of the offer is a different matter from that of the date when the offer is no longer "pending" pursuant to paragraph (m). It may indeed be true, as the district court states, that 'the withdrawal of an offer in compromise is effective as of the date the taxpayer writes his letter of withdrawal.' That judgment, however, would be true as a matter of substantive contract law. However, the statute of limitations question turns on when the offer ceases to be 'pending' under paragraph (m) of Form 656. The latter controls when the statute of limitations begins to run again.

<u>Donovan</u>, 348 F.3d at 512-13.

Here, the offer ceases to be pending for purposes of the statute of limitations when an IRS officer, in writing, "accepts, rejects, or withdraws the offer." On June 24, 1993, no IRS officer, in writing, accepted, rejected, or withdrew Elton's offer. Thus, just as the <u>Donovan</u> court

explicitly held that Donovan's offer did not "cease to be pending" for statute of limitations purposes on April 18, 2000 simply because the IRS sent a letter to Donovan stating that "[y]our offer is considered withdrawn as of 4/18/00," Donovan, 348 F.3d at 512-13, Elton's offer did not cease to be pending for statute of limitations purposes on June 24, 1993, simply because the letter from Douglas to Elton stated that Elton's offer was considered withdrawn as of June 24, 1993.

Accordingly, I find that the controlling date for determining when the statute of limitations began to run again is July 29, 1993, the date when the IRS stated the withdrawal of the November 13, 1992 OIC in writing. Therefore, the period that the statute tolled based on defendant's November 13, 1992 OIC is from December 15, 1992 through July 29, 1993– a period of 226 days. By virtue of this extension, the limitations period was extended until October 16, 2001 for tax years 1988 and 1989, and to July 19, 2002 for tax year 1990.

2.      The June 14, 1993 Offer in Compromise

The parties agree that the defendant's OIC dated June 14, 1993 was accepted for processing and consideration by the IRS on August 13, 1993, and accordingly, the SOL began to toll again on that date. (Pl.'s Reply Mem. at 2.)

The parties dispute the amount of time that the June 14, 1993 OIC remained pending. The defendant argues that the tolling period ended on March 2, 1994, "when the IRS sent Mr. Elton a letter formally rejecting the [June 14, 1993] OIC." (Def.'s Mem. in Supp. at 15.) The March 2, 1994 letter from the IRS to Elton referred to the June 14, 1993 OIC, and stated in pertinent part, "[w]e have considered your offer in compromise and regret that an acceptable arrangement has not been reached. . . If we do not hear from you within 30 days, your offer will be rejected." (Letter from Robert L. Douglas to Roger D. Elton, dated March 2, 1994, annexed to Elton Am. Aff. at Exh. I (emphasis added).) The defendant further argues that his subsequent

18

submissions (the April 12, 1994 OIC, the July 21, 1994 OIC, and the January 10, 1995 letter withdrawing the pending OIC) "were letters and/or proposed OICs that the Government never accepted for processing," and therefore, these submissions did not toll the SOL. (Def.'s Reply Mem. at 6.) The government maintains that the June 14, 1993 OIC remained pending until January 10, 1995, the date on which the IRS in writing stated that the pending OIC(s) were withdrawn. (Pl.'s Reply Mem. at 9.) The government argues that the June 14, 1993 was twice amended (on April 12, 1994 and July 21, 1994), and remained pending until the IRS stated in a letter dated January 10, 1995 that Elton withdrew it by his letter to the IRS also dated January 10, 1995. (Pl.'s Mem. at 13.)

The controlling language again is Paragraph 8 of IRS Form 656. Paragraph 8 specifies that the statute of limitations is tolled while an offer is pending, and that the "offer shall . . . remain pending until an authorized official of the Internal Revenue Service formally, in writing, accepts, rejects or withdraws the offer." (June 14, 1993 OIC ¶ 8, annexed to Elton Am. Aff. as Exh. D.) Contrary to defendant's assertions, the March 2, 1994 letter to Elton from the IRS was not a "formal rejection" of the June 14, 1993 OIC. The letter clearly stated that the OIC had been considered and that an acceptable arrangement had not been reached, and significantly, that "[i]f we do not hear from you within 30 days, your offer will be rejected." (Id.) (Emphasis added.) Elton did contact the IRS within 30 days, however, by letter dated March 31, 1994, faxed to the IRS on April 1, 1994, stating that he would re-submit the OIC. Thus, Elton's conduct served to delay the IRS in rejecting the offer, and as the government notes, the statute continued to toll.

Thereafter Elton submitted another OIC dated April 12, 1994, to which the IRS responded with a letter, dated May 27, 1994, stating that the OIC had been considered and that an acceptable arrangement had not been reached, and again stating that "[i]f we do not hear from

you within 30 days, your offer will be rejected." (Id.) (Emphasis added.) Again, just prior to the expiration of the 30-day period, Elton delivered a letter to the IRS noting his intent to supplement his OIC, followed by the submission of still another OIC (the July 21, 1994 OIC). For a third time, by letter dated October 7, 1994, the IRS indicated that the OIC had been considered and that an acceptable arrangement had not been reached, and that if the IRS did not hear from Elton within 30 days, the offer would be rejected. Again, at the thirty day point, by letter dated November 7, 1994, Elton again contacted the IRS concerning the OIC, seeking to preserve the offer in compromise until he could discuss it further. Finally, by letter dated January 10, 1995, Elton withdrew the offer, and the IRS stated the withdrawal in writing on January 10, 1995.

Under Donovan, discussed supra, the statute of limitations began to run again on the date of the IRS withdrawal of the offer– January 10, 1995. Therefore, the period that the statute tolled based on defendant's June 14, 1993 OIC is from August 13, 1993 through January 10, 1995. This tolling extended the limitations period for tax years 1988 and 1989 an additional 515 days, through March 15, 2003,[3] and extended the limitations for tax year 1990 an additional 515 days, through December 6, 2003.[4]

_____

[3] The government did not compute the extension period mathematically in their briefs, instead electing to specify only that, by its calculations, the OICs alone tolled the limitations period for tax years 1989 and 1990 through February 9, 2003. (See Pl.'s Mem. at 19.)

The Court calculates the period for which the statute tolled based on the June 14, 1993 OIC, i.e. August 13, 1993 through January 10, 1995, as amounting to 515 days, rather than 480 days as calculated by the government. I find that the tolling period would have run through March 15, 2003, not February 9, 2003. Nevertheless, the difference is inconsequential since it has no effect on the outcome of the case due to the application of the transition rule.

[4] The government did not specify the date that on which the statute of limitations for tax year 1990 would have expired, stating only that the OICs would have extended the SOL or tax year 1990 to a date later than February 9, 2005. (Pl.'s Mem. at 19.)

I calculate the tolling period as follows: the ten year-statute with no extensions would

Also at issue here is the effect of the Restructuring and Reform Act on the statute of

limitations period herein. Prior to the Restructuring and Reform Act of 1998, P.L. 105-206, 112

Stat. 685, (the "Reform Act"), the IRS and a taxpayer could negotiate to extend the ten-year SOL

under 26 U.S.C. § 6502(a).  The Reform Act, however, amended 26 U.S.C. § 6502(a) and

modified the authority of the IRS to extend the ten-year SOL.  This amendment– known as the

"transition rule," provides

> Effective Date.--
> (1) In General– The amendments made by this section shall apply
> to requests to extend the period of limitations made after
> December 31, 1999.
> (2) Prior request.– If, in any request to extend the period of
> limitations made on or before December 31, 1999, a taxpayer
> agreed to extend such period beyond the 10-year period referred to
> in section 6502(a) of the Internal Revenue Code of 1986, such
> extension shall expire on the latest of–
> > (A) the last day of such 10-year period;
> > (B) December 31, 2002; or
> > (C) in the case of an extension in connection with an
> > installment agreement, the 90th day after the end of the
> > period of such extension.

P.L. 105-206, § 3461(c).[5]

---

have expired on November 25, 2001 (ten years after the assessment date of November 25, 1991);
however, the November 13, 1992 OIC tolled the period for 226 days (from December 15, 1992
through July 29, 1993), and the June 14, 1993 OIC tolled the period for another 515 days (from
August 13, 1993 through January 10, 1995), for a total tolling period of 741 days.  Thus, the
period to commence the action based on the OICs was extended to December 6, 2003.  The
difference however is inconsequential, due to the application of the transition rule.

[5]It bears mentioning that subsequent to the passage of the Reform Act, Congress passed
two more acts which affected the statute of limitations period where one or more offers in
compromise had been submitted by the taxpayer. The Community Renewal Tax Relief Act of
2000 ("Renewal Act"), Public Law 106-5543, 114 Stat. 2763, eliminated the ability of the IRS to
contractually suspend the statute of limitations as of the date of the Act's enactment, December
20, 2000.  The Job Creation and Worker Assistance Act of 2002 ("Renewal Tax Act"), Public
Law 107-147, 116 Stat. 21, restored the IRS' ability to suspend the statute of limitations during

The parties agree that the ten-year statutorily prescribed period, without any extensions, would have expired on March 4, 2001 for tax years 1988 and 1989, and on November 25, 2001 for tax year 1990.  The government argues, as outlined <u>supra</u>, that but for the limitation in the Reform Act, the OICs extended the ten-year SOL to a date after December 31, 2002.  (Pl.'s Mem. at 8.)  Therefore, according to the government, because the OICs were written agreements already in place prior to December 31, 1999, and not made in connection with an installment agreement, the Reform Act Transition Rule language specifying that "such extension shall expire on the <u>latest</u> of (A) the last day of such 10-year period [,or] (B) December 31, 2002. . ." means that the SOL expired on December 31, 2002. (Pl.'s Mem. in Supp. at 8-9 (emphasis in memorandum).)  The government maintains that by adding the agreed upon extension of one year, ten months, and 18 days for the bankruptcy filings (688 actual days) to December 31, 2002, the SOL was extended to at least November 18, 2004, and therefore the November 16, 2004 filing date of the complaint was within the statute of limitations.  (<u>Id.</u>)

The defendant argues that the government misinterprets the language of the Reform Act transition rule.  (Def.'s Mem. at 12.)  Defendant argues that the Reform Act does not apply, because the OIC tolling agreements would have expired prior to December 31, 2002.  (<u>Id.</u> at 13.) This argument is based on defendant's claim as to the running of the SOL on the OICs.  The Court has not accepted the defendant's argument, as discussed <u>supra</u>.  Thus, since the agreements of the taxpayer and the IRS would extend the SOL to March 15, 2003 for tax years 1988 and 1989, and to December 6, 2003 for tax year 1990, application of the transition rule

---

the pendency of the consideration of an offer in compromise.  <u>See</u> <u>United States v. Ryals</u>, 2005 WL 3338720 (N.D. Fl. Dec. 8, 2005), for a discussion of the interplay of these Acts.  Due to the frequent amendment of 26 U.S.C. Sections 6501 and 6502, the statutory language relevant to this action is most readily accessed by consulting the public law (P.L. 105-206, § 3461(c)), which amended 26 U.S.C. 6502.

actually shortens the SOL tolling period to December 31, 2002.

In support of his argument, defendant cites to the March 4, 2005 <u>Proposed</u> Regulation, as promulgated in the Code of Federal Regulations, which included language that limited the application of the Reform Act Transition Rule to written agreements between the IRS and taxpayers to agreements that by their terms expire before December 31, 2002. (<u>Id.</u> (citing Proposed Reg. § 301.6502-1(c), which provides that any agreed-upon extension shall expire on the last day of the original 10-year statutory period or December 31, 2002, "unless the written agreement expires by its terms prior to December 31, 2002").) The defendant also cites to a passage from Commerce Clearing House's Federal Tax Service, discussing the Proposed Regulation, and noting that "[a]ny other extension agreement executed on or before December 31, 1999 expires on the later of: (1) December 31, 2002, or, if earlier, the date of which the extension agreement expired by its terms; or (2) the end of the original 10-year statutory period." (Def.'s Mem. at 13 (citing Fed. Tax Service (CCH) Sec. P:25.101 (2005)).) As noted above, since the Court has found that the prior extensions would have expired in March and December 2003, the argument is not applicable to the facts here.[6]

---

[6]Moreover, "proposed regulations are not entitled to judicial deference, and carry no more weight than a position advanced on a brief." <u>Estate of Howard</u>, 91 T.C. 329, 337 (1988), <u>rev'd on other grounds</u>, 910 F.2d 633 (9th Cir. 1990). <u>See also</u> <u>Laglia v. Commissioner of Internal Revenue</u>, 88 T.C. 894, 897 (1987), <u>rev'd on other grounds</u>, 798 F.2d 195 (7th Cir. 1986). This is especially true in a case such as this one, where the IRS did not publish this position prior to the controversy (the proposed regulation was issued almost four months after the government filed its complaint). <u>General Dynamics Corp. and Subsidiaries v. Commissioner of Internal Revenue</u>, 108 T.C. 107, 120-21 (1997) (noting that proposed regulations are generally not afforded any more weight than that of a position advanced on a brief, especially "where respondent [Comissioner] did not publish her position prior to this controversy") Lastly, even if defendant had made a persuasive argument that the statute was ambiguous in some regard, "[s]tatutes of limitation barring the collection of taxes must receive a strict construction in favor of the government." <u>Loewer Realty Co. v. Anderson</u>, 31 F.2d 268, 269 (2d Cir. 1929) (citing <u>E.I. Dupont de Nemours & Co. v. Davis</u>, 264 U.S. 462, 44 S. Ct. 364, 68 L. Ed. 788 (1924)).

For the foregoing reasons, December 31, 2002 is the date on which the statute of limitations period resumed, under the OIC agreements, pursuant to the Reform Act. The bankruptcies add a period of 1 year, 10 months and 18 days to the December 31, 2002 expiration date, thereby extending the statute of limitations to November 18, 2004. Thus, the government's complaint, filed on November 16, 2004, was timely filed.

D.    The Additional One-Year Extension

The parties also dispute the application of the following language from the paragraph 8 of the OICs Elton submitted on IRS Form 656:

> The taxpayer-proponents agree to the waiver and suspension of any statutory periods of limitations for assessments and collection for the tax liability described in paragraph (1) while the offer is pending, during the time any amount offered remains unpaid and for one (1) year after the satisfaction of the terms of the offer.

(See November 13, 1992 OIC ¶ 8, annexed to Elton Am. Aff. as Exh. B; June 14, 1993 OIC ¶ 8, annexed to Elton Am. Aff. as Exh. D.) The government maintains that this provision extended the SOL another year.[7] The defendant argues that the above-cited language in paragraph 8 of the OICs does not apply here because the language "one (1) year after the satisfaction of the terms of the offer" refers only to "an OIC whose terms were formally accepted by the IRS as a compromise of the taxpayer's liability." (Def.'s Mem. at 14-15.) Defendant maintains that because Elton's OICs were not formally accepted by the IRS, and because rejection of the OICs

---

[7]The government argues that because, as discussed supra, an IRS official may only accept, reject, or withdraw an offer, the phrase "satisfaction of the terms of the offer" includes rejection of or acknowledgment of withdrawal of the OIC, and "[a]cceptance is not necessary for the express terms of the offer to be satisfied." (Pl.'s Mem. at 15-16.) Thus, according to the government, "because Defendant withdrew two OICs, two more years were added on to the SOLs" (id.), such that the statute of limitations is extended to November 18, 2006. This argument is not persuasive. I prefer the reasoning of the court in United States v. Steinberg, United States v. Steinberg, No. Civ. A.H.-02-4902, 2004 WL 2251805 (S.D. Tex. Jan. 16, 2004).However, it is not necessary to decide this issue. Unlike the situation in Steinberg, here the transition rule is controlling, discussed infra.

is inconsistent with "satisfaction of the terms of the offer," the additional year-long waiver provision is not applicable. (Def.'s Reply Mem. at 8.) Neither party cites any case law in support of its interpretation of the language at issue.

The government alternatively argues that Elton twice amended his June 14, 1993 OIC with OICs dated April 12, 1994 and July 21, 1994 on a later– and different– version of Form 656, which states in relevant part:

> [t]he waiver and suspension of any statutory periods of limitation for assessment and collection of the amount of the tax liability described in item (4), continues to apply: (I) while the offer is pending. . . (ii) during the time I/we haven't paid all of the amount offered, (iii) during the time I/we haven't completed all the terms and conditions of the offer, and (iv) for one additional year beyond the time periods identified in (I), (ii), and (iii) above.

(Offer in Compromise, Rev. Sept. 1993, annexed to Steiner Aff. as Exh. 10, ¶ n.)

The government contends that the additional one year specified in item (iv) should be applied here and added on to the limitations period <u>after</u> the effect of the Reform Act is taken into consideration (<u>see</u> Pl.'s Mem. at 17), such that the statute of limitations is deemed to have expired on November 18, 2005. The government's only support for its argument is <u>Donovan</u>. The government states in its memorandum that the <u>Donovan</u> court "clearly viewed the additional year tack-on as effective, or else the United States could not have won the case. The court of appeals decision implicitly reflects the acceptance of this principle." (Pl.'s Mem. at 17.) The <u>Donovan</u> court did not discuss the transition rule.

The Reform Act transition rule must be taken into consideration, regardless of whether the act serves to shorten or lengthen the statute of limitations period. Two courts have held that the statute extends the limitations period to December 31, 2002 where the limitations period would otherwise have ended before December 31, 2002. In <u>United States v. Ryals</u>, No.

03-CV-0090, 2005 WL 3338720 (N.D. Fl. Dec. 8, 2005), the court found that the end of the agreed waiver of limitations period, prior to the application of the Reform Act, fell on November 29, 2002. Id. at *4. The government argued that under the Reform Act, since November 29, 2002 is before December 31, 2002, the Reform Act extended the statute of limitations period to December 31, 2002. Id. at *5. Ryals, like the defendant here, argued that the Reform Act was not intended to extend the statute of limitations beyond the extended period of November 29, 2002. Id. The court held that "going from the face of the statute, it appears clear to this Court that, as a result of the Reform Act, the collections period was extended in this case to December 31, 2002. Had Congress intended the Act to do otherwise, they could have stated that the collections period expires on the earliest of the three dates, not the latest." Id. (emphasis in original). Similarly, in United States v. Cook, the defendant signed a waiver on December 4, 1992, and argued that the waiver tolled the collection period until December 6, 2002. United States v. Cook, No. 02-CV-9475, 2004 WL 690804, at *7 (E.D. Pa. March 22, 2004). The court held that the Reform Act extended the collection period to December 31, 2002, rather than December 6, 2002. Id.

Here, the additional year is inconsequential because the effect of the pending OICs, as limited by the transition rule, renders the government's action timely. Nonetheless, I find that the transition rule limits any agreed waiver to December 31, 2002, and does not extend the SOL beyond the November 18, 2004 expiration date .

## III.  CONCLUSION

Defendant's motion for summary judgment is denied and government's cross-motion for summary judgment is granted. The complaint was timely filed, and defendant is liable for the unpaid balances of assessments for tax years 1988, 1989, 1990, and 1991, together with penalties, interest and statutory additions.

The government shall submit a proposed judgment on notice within ten (10) days of the date of this Order.

SO ORDERED.

Dated: Central Islip, New York
       May 3, 2006

                                        /s/ E. Thomas Boyle
                                        E. THOMAS BOYLE
                                        United States Magistrate Judge